This case raises some challenging issues for you, but quite frankly, we thought that Wilkerson was even more complicated, so we took that one first in the hope that you would be able to answer some of the questions that you may have. Perhaps now that counsel understands some of the court's concerns, we can channel the argument in this case. So with that preface, the floor is yours, Ms. Starr. With the court's permission, may I reserve five minutes for rebuttal? Of course. Thank you. It's our position that in this instance, there was an unreasonable determination of the facts in light of the evidence that was introduced at trial against Mr. Robinson. I do want to point out that the appellant's brief on direct appeal is contained in the district court record, although it was not included in the reproduced record. It's attached to the Commonwealth's response to the 2254 Docket Number 11, Exhibit 3. Before we get to merits, can we address questions of procedural default and also waiver here? Because while Anderson is cited in the brief to the Superior Court, when it came to the petition for allowance of appeal, your client only raised a claim under Belsar. Would that be sufficient to give fair notice to the highest level of the state court system that there was a federal double jeopardy claim being raised? The only final opinion, I believe, for Mr. Robinson was from the Superior Court. That's not what we look to under a Supreme Court case law, right? The abatement of the lease causes you a problem there, right? Well, I think that there was no Belsar at the time. I believe that, first of all, there was no merger statute in effect in Pennsylvania at the time of this crime. And there was no Belsar at the time of this crime. And the case law that was in effect when the appeal was originally briefed was Anderson. So I think that certainly the Pennsylvania Supreme Court would have been aware that Mr. Robinson had raised an Anderson claim. It would have had to have studied the Superior Court opinion to know that, though, correct? But that has to be attached to the application for allowance of appeal. But what does Baldwin v. Reese say about that? I'm not sure you've addressed that. I'm sorry, Your Honor. I'm not sure. In Baldwin, a position for review in the Oregon Supreme Court that didn't raise an issue that had been raised in a lower court was deemed not to give sufficient notice, didn't provide fair notice for purposes of default. This seems analogous, doesn't it? Well, Your Honor, I think that Belsar still goes to whether there's a double jeopardy issue involved. Where does Belsar ever mention double jeopardy? I don't remember it being in there. Well, it goes to whether you can punish twice for the same offense and when you have the same offense and when you don't have the same offense. And that's under state law merger doctrine, right? And there was a state law merger doctrine, in effect, I believe, at the time that Belsar was decided. But again, there was no statute addressing merger in Pennsylvania at the time of this original briefing in the appellate court. So I think in any event, certainly I think we've argued Martinez v. Ryan. Well, let's say hypothetically we get over the procedural default on a different ground under McCandless. Don't you still have the problem that the only claim that was raised in the federal habeas petition in the district court was a due process claim, not a double jeopardy claim? Well, if merger and due process are the same issues, then I don't see where there is any deficiency in the pleadings in district court. Was the claim preserved? Was a double jeopardy claim raised in the district court? Yes, the double jeopardy claim was raised in the district court. How so? Well, it was raised as a due process violation. Isn't that a different clause of the Constitution? It's a different claim. Well, the due process clause, what claim was that there was a violation of the double jeopardy clause. You see, it's the same offense. How is that articulated before the district court? Where it's not, notwithstanding a COA in the consolidation for disposition purposes with the Wilkerson case, why should we deem the double jeopardy claim to be properly before us in Robinson's case? Well, Your Honor, I think that throughout the 2254, Mr. Robinson made the argument that he could not be punished twice for the same offense, that he was punished twice for the same offense, and that it would be a violation of the double jeopardy clause. Your Honor, when I have my pause, I will look through the 2254 and try to answer it more specifically for you. Okay. Thank you. Okay. It's our position that under the Ash case, we would start with the presumption that there is a double jeopardy violation when the two, under applying the blocker test, if you look to the statute and not to the facts and the elements overlap, the defendant is presumptively entitled to have the crimes considered as one crime. And I understand the additional considerations that the court is directed to by Ash that were articulated in the prior argument, such as the charges to the jury, the evidence, the jury instructions, the verdict. And in this case, I think Mr. Robinson is on very solid ground when those are examined. The testimony at trial was that Mr. Glenn was shot. This is from Glenn. He was shot in the stomach. He tried to pull himself up and blow the horn for help. As he did that, Robinson dragged him by the jacket. The jacket ripped and Glenn was lying between the car and the car door. He immediately looked up and saw the gun pointed at his head. Robinson shot the gun, but it hit Glenn in the hand. And he was shot in the stomach with the gun splitting open his eye, breaking his jaw, and knocking out his teeth. The Commonwealth's opening statement says that Robinson shoots Glenn in the stomach. And then Commonwealth goes on to say, he doesn't stop there. After shooting him in the stomach, the defendant takes aim at Kenneth Glenn's head. And I guess in a feeble attempt to ward off that bullet, Kenneth Glenn raises his left hand. This is the fatal shot. Raises his left hand over his head and is hit in the left hand by the defendant. There's nothing about the pistol whipping whatsoever in the opening statement. The closing argument, the Commonwealth says the victim is trying to get back in the car. The testimony shows that at the time he gets back to the car, Robinson still refuses to let the victim go away. He won't let this situation end. He is still preventing the victim from leaving the scene. The gun did not go off immediately, one after the other. And when he was trying to get away, he saw the gun pointed at his head and attempted to deflect the shot and was shot in the hand. In fact, after the shot, he continues to assault that man. The prosecution never made the argument that the shooting and pistol whipping were separate incidents. And it was presented as one seamless crime. The jury was not instructed to find the shooting and pistol whipping were separate incidents. What case law says that that's required? Well, we were discussing Ash and what the court looked at in Ash. It looked at the evidence. Okay, it looks at the arguments. But the Supreme Court didn't say that the court, the jury must be instructed, right? Well, Jones was in effect at the time of this trial. And under Jones, it was necessary to make the jury aware of what the elements of the crime were. And looking at the... But you're disputing about that, that the jury instructions covered the elements of the offenses in question, right? Right, Your Honor. But looking at the federal child pornography cases that the court referred counsel to, those cases were very specific, that if you want to convict a person of multiple counts involving child pornography, possession, distribution, receipt, that you had better be very careful to spell out in each of those charges which child images you were talking about, which dates and time you were talking about, that you were required to plead that with some specificity if you wanted to get beyond the double jeopardy argument. Don't those cases stand for the proposition that the federal courts of appeals currently in trying to ascertain, looking back, whether those two offenses, one lesser and one greater, of included offenses, are based on the same act, that there's a variety of approaches that they've taken. Some look at just the jury instructions. Some look at the totality of the record. But there's not a single clearly established approach that the federal circuits are taking to try to assess whether a lesser included offense and greater have been premised on the same act or in different acts. Well, there may be a variety of attempts to ascertain it, but there's nothing that says you don't have to do anything, that you can plead aggravated assault, you can plead attempted murder, and you don't have to give the jury any instruction whatsoever that they can't be based on the same acts. In this case, the judge specifically told the jury that if you're going to convict Mr. Robinson of attempted murder, it's on the two shots, the judge was very specific, the two shots that were fired. Okay, he said nothing about what you need to find if you're going to convict him of aggravated assault. And I think it's important to think of some difference between federal charging instruments and state charging instruments. Okay, it's more like when the state drafts charges, it's more like a letter to Santa Claus. And when the government drafts, federal government drafts charges, it's more like a grocery list. Okay, the state is hoping, that's why aggravated assault wasn't even mentioned in the opening argument, they're hoping they get a conviction for attempted murder. If they don't get that, then they hope they get a conviction for aggravated assault. Maybe that's why it's not more specific. They chose not to make it more specific, because if they don't get the conviction for attempted murder, then they'd like all the facts to add up to aggravated assault. It doesn't mean they're expecting to get a conviction on every charge that they bring against a defendant in Pennsylvania court. It means they're hoping, and they're going to start with their strongest case first. Okay, the child pornography cases that the court asked us to look at, they're hoping to get a conviction on every single one of those counts. That's why they're required to be as specific as they are. Whether it's through jury instruction or it's putting the date in the indictment, however they're going to do it, they want a conviction on every one of these counts. So it's really something different in the state. And they are getting away with not putting specifics in. We wouldn't be here today if in the charging instructions to the jury, at the very least, the judge had said two counts, two shots for attempted murder, okay, ag assault, the pistol whipping, the knocking his teeth out, the bone of the eye socket, but the state chose not to do that so that they can go through their wish list of what they might get. Okay, so it's our position that it does not satisfy, it doesn't rebut the presumption of double jeopardy that Mr. Robinson had when the two crimes are laid side by side and compared. Okay, thank you, Mr. We'll hear you on rebuttal. Thank you. Ms. Andrews. Good afternoon, may it please the court. My name is Jennifer Andrews representing Appalese. It is our position that Robinson, at least, is a very simple and very straightforward case. I don't think that there's really any reasonable dispute as to the outcome in this case. In order to prevail, Robinson would have to show that, because we're in Hagueis, that the state court's decision was, as he has conceded, based on an unreasonable determination of the facts in light of the evidence, and clearly it was not particularly under the deferential standard that is appropriate here. You don't want to argue procedural default? Or waiver? I would love to, but I don't know that there is anything I could add to the questions that this court has already asked, and we were instructed to focus on the determination in light of Harmon, so I understood from that that this court was primarily interested in merits issues. Well, we're also interested in the procedural issues, so why don't you spend a little bit of time on those. Yes, Your Honor. It is our position that appellate review of this issue would be inappropriate since it was not mentioned at any point below. As this court has already noted, the only quasi-related claim that Robinson presented was a due process allegation saying that the state courts had violated his due process rights by failing to merge his sentences, which, first of all, we didn't even concede that necessarily, but also he didn't raise a double jeopardy claim in district court. Does that answer the question? Yes. Thank you. So as to the merits... As to procedural default, do you concede that putting aside whether a reference to Belsar itself is enough to give fair notice of a federal constitutional violation, that the third and fourth categories of fair notice under McCandless would cover a situation where someone was arguing that they were being punished twice or being convicted twice for the same action? I think that a state court discussion as to merger can be instructive, but that merely alluding to a state court case such as Anderson or Belsar, which can be used as a springboard for further research to dig up a federal claim, is not sufficiently direct to put the state courts fairly on notice that the petitioner wishes to raise a federal claim. I completely agree with you. I'm not asking about that second category, that is the reference to a state case that applies a federal constitutional analysis, but rather to the third and fourth categories in McCandless that are really directed to whether the facts that have been alleged, the arguments raised, are in the sort of mainstream of constitutional litigation, as to a particular constitutional right. I think that's a very difficult question, because you have to go back as to whether that was sufficiently obvious in the context of the particular case presented to the state courts, and so it's difficult for me to argue that as an abstract hypothetical. In this case, again, I think that the merger and double jeopardy analyses are close enough that you can look at the state court's analysis and say, oh, they were on notice, because it looks like they may have addressed a federal due process claim, but where that was not explicitly laid out in front of them, it is, in fact, a different analysis. I apologize. I feel like I may have jumped over the answer rather than landing on it. Does it address the concern about whether fair notice has been provided to the state court, and in the state court's opinion, sui sponte addresses a federal constitutional claim? In this case, I would say if the Superior Court had alluded to federal precedence and had made it clear that the Superior Court in Robinson had considered federal claims, then yes, it would be the same. However, if the Superior Court in Robinson merely alludes to Anderson, it is not clear to me, then, that it did consider federal precedence for a federal claim. Okay. Shall I begin the brief merits argument now? Thank you. So I think that under it, it is petitioner's burden to show that there was some violation, and he cannot, because even under the much more direct appeal context presented in the child pornography cases, it is clear that he would not prevail even under that standard. So in Benoit, the dispositive issue was that all of the criminal charges were alleged to have been founded on the same underlying conduct. Particularly, the court stated in Benoit that both the prosecutor and defense counsel expressly stated to the jury that the two counts were based on identical conduct, and that there was nothing in the manner the evidence was presented at trial that would suggest to the jury that the two counts related to distinct images. Therefore, taking the entire record as a whole, it was clear that all of the convictions were based on the same underlying conduct. Halliday distinguishes, or is distinct from that, because under the facts of that case, there was proof of separate videos that could have supported the different convictions. And Halliday further noted that even where the indictment contains overlapping time periods, the government's evidence at trial can support a finding of separate violations, even though they occurred perhaps at the same time. Halliday noted that the government would be wise to clearly indicate in the indictment which images were intended to support which charges. However, the court continued to say the absence of such an instruction does not alter the analysis. So it is clear that even in the direct-to-bail conduct, or context, it's almost a sufficiency analysis, almost a sufficiency type of analysis, and so under EDPA's much more deferential standards, it seems very clear to me that where there were two underlying acts, or three, there were two separate shootings and then also the pistol whipping, which inflicted grievous injury on the victim. It would certainly be enough to support both attempted murder and aggravated assault convictions based on different underlying criminal conduct. And I would also briefly allude to Oregon v. ICE, which was briefed in Wilkerson since the two cases were consolidated. And note that part of the analysis in ICE was that the underlying facts were that the respondent went into a girl's residence, committed a burglary, and then committed two sexual assaults each time. He was convicted of first-degree sexual assault for touching the victim's breasts and then again for touching her vagina. So that's actually two charges of the exact same offense. But the underlying conduct was different. And in ICE, they stated that the analysis hinged on whether his conduct caused or created a risk of causing greater qualitatively different loss, injury, or harm to the victim, which again we have here. It is clearly qualitatively different to be shot and then to be hit by a gun in the face. So based on that, I would say particularly given the deferential standard of review, it's very clear that there is no murder, there is no double jeopardy, and there is no due process violation here. Thank you, Ms. Edwards. Thank you. Ms. Braun, Mr.? Yes, Your Honor. When we produced the record at 95, as part of the 2254 petition, Mr. Robinson made the argument that the convictions for attempted murder and aggravated assault are convictions for the greater offense. Convictions cannot be subdivided without a jury verdict justifying the conclusion that the crime of attempted murder was based on the shooting and the aggravated assault was based on the pistol whipping. So... Which petition is that? The habeas corpus petition. The federal habeas petition? Yes. Okay. 94. So it doesn't help you with fair presentation in the state court? You had asked, I think, if it had been raised in the 2254 petition. Okay. This is under the header of denial of due process of sentencing, citing to Jones. Right. But I did still make the argument that it was a impermissible imposition of penalty for the same charge. Wouldn't you write it differently next time? If I'd known Harmon... You'd say double Jeopardy. If I'd had Harmon before I wrote the brief, I probably would have written it differently. But I didn't have Harmon before I wrote the brief. Your Honor, when did Mr. Robinson stop trying to kill Mr. Glenn? And if we can't point to some point where Mr. Robinson stopped trying to kill Mr. Glenn, then it is one continuing act. That's the way the prosecution presented it as one continuing act. He wouldn't stop. The prosecutor said he just wouldn't let the man get away. The man's trying to get away to save his life. Okay. The charge is attempted murder. And so... How do you square that with Belsar? I thought the whole point of Belsar is not to give the, quote, discount to the attempted murderer who, you know, beats the heck out of his intended victim. Why should that person be put in the same position as the attempted murderer who simply fires a shot at somebody? Am I misreading Belsar or wasn't that the point of Belsar? Belsar what? The Belsar point was he stopped. He stopped. It was two separate incidents. He stopped. He shot the man. He walked away. He came back. The man wasn't dead so he started kicking him. Okay. The Belsar specifically said there were two separate incidents, not one continuous act. Okay. And... And there's not evidence here that Robinson went back? Robinson never left. Okay. That's our point. It was one continuous act as the prosecutor said he wouldn't let the man get away. He wouldn't let this stop. As to whether you get a free pass, we also have Commonwealth versus Anderson that says we should not lose sight as judges of that which common sense dictates. Justice defendants are not entitled to volume discounts for multiple crimes neither should they suffer multiple punishments for the same conduct. That's our position of what happened here. It was the same conduct. There was no break. When did he stop trying to kill Mr. Glenn? Okay. All right. So your argument comes back to it's one continuous act. Yes, Your Honor. Okay. All right. I think we understand your position. Thank you. Court appreciates counsel's work. We'll take a short break.  right back.